E-FILED
Thursday, 19 March, 2015  10:22:59 AM
Clerk, U.S. District Court, ILCD

UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
PEORIA DIVISION

| | |
|---|---|
| MARCO HENDERSON, #K-58827, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No.  13-1428 |
| ) | |
| VALERIE BRIMBLE, et al., ) | |
| ) | |
| Defendants. ) | |

## OPINION

Now before the Court is the Motion for Partial Summary Judgment (ECF No. 32) filed by Defendants Tammy Bennett, Correctional Lieutenant [1] ("Bennett"), Valerie Brimble, Correctional Officer ("Brimble"), Gregg Gossett, Warden of Operations ("Gossett"), Michelle Pulley, Warden of Programs ("Pulley"), Wayne Steele, Correctional Major ("Steele"), and Joseph Yurkovich, Warden of Henry Hill Correctional Center ("Yurkovich") (collectively Bennett, Brimble, Gossett, Pulley, Steele, and Yurkovich referred to as "Defendants")[2] arguing that summary judgment in their favor is appropriate because Plaintiff Marco Henderson ("Henderson" or "Plaintiff") failed to exhaust his administrative remedies related to his claim against the Defendants.  For reasons stated herein, the Motion for Summary Judgment (ECF No. 32) is DENIED.  The stay on merit discovery is now lifted and a new scheduling order shall be entered forthwith.  Parenthetically, Plaintiff has filed a Motion for Status Update (ECF No. 59).

---

[1] Defendants' titles appear as those alleged in the Complaint.

[2] Although the Motion is brought by all of the Defendants, the Defendants narrow the relief sought by explaining that Plaintiff has failed to fully and properly exhaust his administrative remedies with respect to his claims against Defendants Gossett, Pulley, and Steele.

1

The current status of the case is contained herein; therefore, the Motion for Status Update (ECF No. 59) is MOOT.

## BACKGROUND

In his Complaint[3], Henderson alleges that on February 14, 2012, his wife came to visit him at the Henry Hill Correctional Center ("HHCC") where he was then being housed by the Illinois Department of Corrections. (ECF No. 1 at 5). During their visit, Henderson alleges that Defendant Brimble, a Correctional Officer at HHCC, stared at him and his wife to such a degree that it made Henderson's wife feel uncomfortable. *Id*. Henderson informed his wife that she could file a complaint with the warden about Brimble's conduct. *Id*.

On or around March 20, 2012, Henderson received two disciplinary tickets based upon Brimble's allegations that he made inappropriate comments to her. (ECF No. 1 at 6). Henderson alleges that he could not have made the comments because he was at his school assignment at the time the event occurred. *Id*. On March 27, 2012, Henderson appeared before the HHCC's Adjustment Committee and informed the Committee that Brimble had lied about him making inappropriate comments and further explained that his wife had called HHCC and complained about Brimble's conduct during the February 14, 2012, visit. *Id*. In late March or early April 2012, Henderson filed a grievance about the harassment that he had been receiving from Brimble. (ECF No. 1 at 7).

On or around September 18, 2012, Henderson alleges that he was attacked by another inmate. (ECF No. 1 at 9). Henderson alleges that Brimble coerced and solicited the inmate to attack him, and as a result, he sustained physical injuries. (ECF No. 1 at 10). Despite being the

---

[3] While this matter is before the Court on a Motion for Summary Judgment, the Motion attacks the Plaintiff's Complaint on the failure to exhaust administrative remedies. In order to provide context, the factual basis for the claims are deduced from the Complaint. The grievance history is outlined in detail below.

victim of the attack, Henderson received two disciplinary tickets as a result of the fight. (ECF No. 1 at 13).

On or around September 29, 2012, Henderson went before the Adjustment Committee to address the fight with the other inmate. (ECF No. 1 at 14). Defendant Bennett, a Lieutenant at HHCC, served as chair of the Committee. *Id*. Henderson objected to Bennett serving on the Committee because she had previously investigated the fight between the other inmate and Henderson. *Id*. Bennett did not recuse herself from the Committee, and Henderson received various disciplinary measures, including one year in segregation. (ECF No. 1 at 14).

On or around October 9, 2012, Henderson was again called before the Adjustment Committee where he received more disciplinary measures, including another year of segregation. (ECF No. 1 at 15). On or around October 31, 2012, Henderson was transferred to the Pontiac Correctional Center.

On September 13, 2013, Henderson filed his Complaint against several employees of HHCC, including the Defendants seeking summary judgment. On October 8, 2013, this Court entered its Merit Review Order pursuant to 28 U.S.C. § 1915A, finding that Count I of Plaintiff's Complaint stated a claim against Defendants Brimble, Steele, Gossett, Yurkovich, and Pulley for breaching their duty to protect him from known risks under the Eighth Amendment. (ECF No. 8). The Court also found that Count III of Plaintiff's Complaint stated a claim against Defendant Brimble for conspiracy. These were the only claims that survived the Court's initial Merit Review Order. *Id*. On November 18, 2013, this Court entered an order reinstating Henderson's cause of action for deprivation of his due process rights against Defendant Bennett. (ECF No. 18). The Defendants now move for partial summary judgment in their favor arguing that Henderson failed to exhaust his administrative remedies; however, Defendants concede Plaintiff

has exhausted his administrative remedies as to Counts I and III against Defendant Brimble. (ECF No. 33 at 7). Defendants also concede that Plaintiff exhausted his administrative remedies as to Count II against Defendants Bennett and Yurkovich. *Id.*

In support of their Motion, Defendants provide that the records of the Administrative Review Board ("ARB") were searched for grievances filed by Henderson relating to his claims against the Defendants. (ECF No. 33 at 2). While Henderson does not admit this fact, he does not provide any evidence to the contrary. (See ECF No. 51 at 3, Plaintiff states that he "lack (sic) sufficient information to admit or deny whether a search was done."). Furthermore, the Defendants provide that the ARB has only received four sets of grievances from Plaintiff relating to his claims against Defendants. (ECF No. 33 at 2). Plaintiff again does not provide any contrary evidence to Defendants' statement regarding results. (ECF No. 51 at 3). Finally, Defendants' undisputed material facts include that Plaintiff submitted no other grievances to the ARB regarding the claims at issue in this lawsuit. (ECF No. 33 at 2). Plaintiff does not provide any response to this statement. (*See* ECF No. 51 at 3).

## SUMMARY JUDGMENT STANDARD

A motion for summary judgment will be granted where there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c). A material fact is one that might affect the outcome of the suit. *Insolia v. Philip Morris, Inc.*, 216 F.3d 596, 598-99 (7th Cir. 2000). The moving party may meet its burden of showing an absence of material facts by demonstrating "that there is an absence of evidence to support the non-moving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). If the moving party meets its burden, the non-moving party then has the burden of presenting specific facts to

show there is a genuine issue of material fact. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986).

On summary judgment, the inferences to be drawn from the underlying facts must be viewed in the light most favorable to the party opposing the motion. *Matsushita Elec. Indus. Co., Ltd.*, 475 U.S. at 588. Any disputed issues of fact are resolved against the moving party. *GE v. Joiner*, 552 U.S. 136, 143 (1997). The moving party has the responsibility of informing the Court of portions of the record or affidavits that demonstrate the absence of a triable issue. *Celotex Corp.*, 477 U.S. at 323. Federal Rule of Civil Procedure 56(e) requires the non-moving party to go beyond the pleadings and produce evidence of a genuine issue for trial. *Id*. at 324. Where a proposed statement of fact is supported by the record and not adequately rebutted, a court will accept that statement as true for purposes of summary judgment; an adequate rebuttal requires a citation to specific support in the record. *Drake v. Minnesota Mining & Mfg. Co.*, 134 F.3d 878, 887 (7th Cir. 1998). This Court must then determine whether there is a need for trial -- whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may be reasonably resolved in favor of either party. *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 250 (1986).

## DISCUSSION

The PLRA, governs a variety of procedural requirements related to inmate suits brought under 42 U.S.C. § 1983. Under the PLRA:

> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. § 1997e(a).

The Seventh Circuit has taken a strict compliance approach to exhaustion requiring a prisoner to pursue all available administrative remedies and comply with the prison's procedural rules and deadlines. *Pozo v. McCaughtry*, 286 F.3d 1022, 1025 (7th Cir. 2002). If an inmate fails to follow the grievance procedure rules, his claims will not be considered to be exhausted, but instead forfeited, and he will be barred from filing suit in federal court even if administrative remedies are for practical purposes no longer available to him due to his procedural default. *Pozo*, 286 F.3d at 1025; s*ee also Pavey v. Conley*, 544 F.3d 739, 740 (7th Cir. 2008). The exhaustion requirement applies to all inmate suits relating to prison life, including claims involving the use of excessive force. *Porter v. Nussle*, 534 U.S. 516, 532 (2002) ("[W]e hold that the PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong."). To meet the exhaustion requirement, prisoners must follow the administrative steps established by the state. *Pozo,* 286 F.3d at 1025.

The Illinois Department of Corrections has an established grievance process. *See* 20 ILL. ADMIN. CODE §§ 504.800 *et seq*. An inmate is first required to speak with a counselor about the contested issue. 20 ILL. ADMIN. CODE § 504.810(a). If the counselor does not resolve the problem, the inmate must file a grievance form directed to the Grievance Officer within 60 days of the incident. *Id*. The Grievance Officer submits his recommendation to the Chief Administrative Officer who "shall advise the offender of the final decision in writing within two months after receipt of the written grievance, where reasonably feasible." 20 ILL. ADMIN. CODE § 504.830(d). If the inmate is not satisfied with the Chief Administrative Officer's response, he or she can file an appeal with the Director through the Administrative Review Board within 30 days after the date of the Chief Administrative Officer's decision. 20 ILL. ADMIN. CODE §

504.850(a). The Director shall then review the findings and recommendations of the board and make a final determination within six months after receipt of the grievance. 20 ILL. ADMIN. CODE § 504.850(f). When an inmate has received a copy of the Director's decision, the grievance procedure is complete.

The grievance procedure also allows the inmate to file on an emergency basis, bypassing the Grievance Officer and going directly to the Chief Administrative Officer. 20 ILL. ADMIN. CODE § 504.840. However, the procedures for filing an emergency grievance are also outlined in 20 ILL. ADMIN. CODE § 504.810.

The issues in this case are fairly narrow. It is not contested that Henderson can move forward with his case against Defendants Bennett, Brimble, and Yurkovich[4]. As a result, the Court must examine the record to determine whether Henderson can proceed with his claims against Defendants Gossett, Pulley, and Steele.

While not dispositive of the issue, the Complaint contains limited allegations against Defendants Gossett, Pulley, and Steele. Indeed, Plaintiff alleges that after the September 18, 2012, incident, he was escorted to Warden Pulley's office. (ECF No. 1 at 12). While in the office, Henderson informed Pulley that Brimble was the cause of the attack. *Id*. Henderson further alleges that Pulley explained that "Major Steele who was then lieutenant of internal affairs at that time investigated the claim [against Brimble] and because of his findings [Pulley], Gossett, [and] Yurkovich didn't believe [Henderson's] version [ ]." (ECF No. 1 at 13). In sum, Henderson claims that these Defendants knew about Brimble's conduct and disregarded a substantial risk of serious harm to him. (ECF No. 1 at 18).

---

[4] It is unclear whether Defendant Yurkovich is seeking dismissal of Count I against him. (*See* ECF No. 33 at 9, Defendants request relief of only dismissing Defendants Gossett, Pulley, and Steele from Count I). Accordingly, the Court declines to do so at this time.

7

In his Response to the Motion for Partial Summary Judgment, Henderson provides a timeline of his grievance filings. (ECF No. 52). Henderson explains that on May 14, 2012, he filed a grievance complaining of misconduct against Defendant Brimble. (ECF No. 52 at 11). Henderson then explains that on October 21, 2012, he filed another grievance against Defendant Brimble. (ECF No. 52 at 12). The grievance is attached to Henderson's Response and is also included with the Defendants' Motion for Partial Summary Judgment. (ECF Nos. 52-1 at 5 and 33-1 at 49). The October 21, 2012, Offender's Grievance complains of Defendant Brimble's conduct but also complains that he had made the HHCC's administration aware of the issue to no avail. *Id*. Henderson also notes that he filed a grievance on November 7, 2012, directly to the Administrative Review Board. (ECF No. 52 at 13). Henderson's November 7, 2012, Offender's Grievance, attached to both Parties' pleadings, contains similar allegations and request for relief as the October 21, 2012, Offender's Grievance. (ECF Nos. 52-1 at 11 and 33-1 at 6). Finally, Henderson suggests that the Defendants (or others) have refused to document/file some of Plaintiff's meritorious grievances. (ECF No. 52 at 24, Plaintiff indicating that there is a grievance No. 12-2618 that has not been produced). Henderson, however, fails to provide any information that there were allegations against the moving Defendants in the purported grievance he said he filed. Instead, Plaintiff explained that the content of one of the grievance was about inmate Robinson's (the inmate who he alleges attacked him) mental health. (ECF No. 52 at 22).

But, the Defendants acknowledge that Henderson alluded to "the Henry Hill Administration" in his grievance dated October 21, 2012. (ECF No. 33 at 8). The October 21, 2012, Offender's Grievance specifically provides that "Grievant Henderson grievanced (sic) the said conduct of correctional officer Valerie Brimble and clearly made the Henry Hill Administration aware of the above accusations and requested for c/o Brimble to be removed

8

from his living corridors or placed on leave and stop the slander for this correctional officer is continuously soliciting to put Grievant Henderson['s] life in danger, and this administration fail[ed] to protect[ ] Grievant from the constant solicitation and unprofessional conduct of c/o Brimble." (ECF No. 33-1).

While the Court recognizes that the specific names of the administrators are not listed in the grievance, the Court finds the grievance is sufficient to allow the Plaintiff to go forward on his claims against Defendants Gossett, Pulley and Steele. The Seventh Circuit has concluded that the fact that an inmate "didn't specifically name the defendants in the grievance was a mere technical defect that had no effect on the process and didn't limit the usefulness of the exhaustion requirement." *Maddox v. Love,* 655 F.3d 709, 722 (7th Cir. 2011); s*ee also Jones v Bock,* 549 U.S. a199, 219 (2007) ("We are mindful that the primary purpose of a grievance is to alert prison officials to a problem, not to provide personal notice to a particular official that he may be sued; the grievance is not a summons and complaint that initiates adversarial litigation." *citing Johnson v Johnson,* 385 F.3d 503, 522 (5th Cir. 2004)); *but see Roberts v. Neal*, 745 F.3d 232, 234 (7th Cir. 2014)("fatal defect" in grievance was it "neither mentioned (defendant) by name nor provided information that should have identified him to the grievance officer.") and *Ambrose v. Godinez,* 510 Fed.Appx. 470, 472 (7th Cir.2013) (affirming the dismissal of prison officials where the plaintiff's grievance failed to mention the officials by name or otherwise implicate them in the alleged constitutional violation). In this case, Plaintiff has provided sufficient information that *could* provide the identification of the individuals who he complains; but has also specifically outlined the conduct to which he complains. While it may be a close call, Plaintiff alerted prison officials (either at the prison or the ARB) to a problem. Because the Motion for Partial Summary Judgment is based solely on the exhaustion of administrative

remedies (and not the merits), the Court finds that Plaintiff's claims against Gossett, Pulley and Steele can go forward at this time.

## **CONCLUSION**

For reasons stated herein, Defendants' Motion for Partial Summary Judgment (ECF No. 32) is DENIED.  Furthermore, the stay on merit discovery is now lifted and a new scheduling order shall be entered forthwith.  Plaintiff's Motion for Status Update (ECF No. 59) is now MOOT.

Entered this 19th day of March, 2015.

/s/ Michael M. Mihm

Michael M. Mihm
U.S. District Court Judge